UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| XL SPECIALTY INSURANCE COMPANY | CIVIL ACTION |
| v. | NO. 13-95 c/w 12-811 |
| SETTOON TOWING, LLC | SECTION F |

ORDER AND REASONS

Before the Court is Settoon Towing, LLC's motion for summary judgment.  For the reasons that follow, the motion is DENIED.

Background

This case arises out of an insurance dispute over payment for injuries that allegedly happened during the handling of benzene-containing chemicals and solvents.

For a total of eighteen years, Stephen Scott worked as a seaman on board marine vessels for Cenac Towing Co., LLC and Settoon Towing, LLC.  He worked for Cenac Towing from 1993 to 2000 and for Settoon Towing from 2000 to 2011.  While working for both companies, Mr. Scott encountered benzene-containing products, including gasoline, diesel, and crude oil.  On October 8, 2011, Mr. Scott sought medical treatment at Terrebonne General Hospital for nose and mouth bleeding, dizziness, and vomiting. He was transferred to West Jefferson General Hospital where he was diagnosed with aplastic anemia, which causes insufficient production of new blood cells.  Mr. Scott alleges that his

1

condition developed as a result of his exposure to benzene.  At the time of the manifestation of his condition, Mr. Scott was employed by Settoon Towing, and, as his Jones Act employer, Settoon Towing paid Mr. Scott maintenance and cure.

Scott sued Cenac Towing and Settoon Towing in this Court on March 27, 2012, alleging claims of negligence under the Jones Act and the general maritime doctrine of unseaworthiness.  Through its insurance agent, Settoon Towing submits that it notified XL Speciality of Mr. Scott's lawsuit, requesting coverage for its potential liability during the period of time in which XL Speciality's policies were in effect, namely, November 2, 2000 through November 2, 2004.  XL Speciality denied coverage of Mr. Scott's claims on December 26, 2012.

In December 2012, Mr. Scott agreed to settle his claims against Cenac Towing and Settoon Towing.  With the exception of XL Speciality, all known underwriters subscribing to Settoon Towing's various applicable insurance policies contributed to Settoon's portion of the settlement.

On January 17, 2013, XL Speciality filed a complaint for a declaratory judgment against Settoon Towing, requesting a declaration that (1) XL Speciality was not provided notice of the claims asserted in the Scott lawsuit within the time period called for in the policies; (2) XL Speciality has no duty to defend Settoon under the policies against the allegations made in

the Scott lawsuit; (3) XL Speciality has no duty to indemnify Settoon under policies; and (4) there is no coverage under the policies for the claims asserted in the Scott case.  Settoon Towing now moves for summary judgment, asserting that no genuine issue of material fact exists as to the XL Speciality's obligations under the insurance policy.

<u>Legal Standard</u>

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law.  No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.  <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio.</u>, 475 U.S. 574, 586 (1986).  A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion.  <u>See</u> <u>id.</u>  Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate.  <u>Id.</u> at 249-50 (citations omitted).  Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case.  <u>See</u> <u>Celotex Corp. v.</u>

3

Catrett, 477 U.S. 317, 322-23 (1986).  In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party.  See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992).  Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims.  Id.  Hearsay evidence and unsworn documents do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987).  Finally, in evaluating the summary judgment motion, the Court must read the facts in the light most favorable to the non-moving party.  Anderson, 477 U.S. at 255.

## I. Discussion

Settoon Towing contends that summary judgment is appropriate because no genuine issue of material fact exists as to XL Speciality's obligations under the insurance policy. Specifically, Settoon asserts that it complied with the "claims notification clause," which Settoon submits has two options for notification.  The Court does not agree.

### A.

This motion requires the Court to interpret a marine insurance policy:  interpretation of marine insurance is governed by the relevant state law, which in this case is Louisiana law, and is a question of law for the Court to decide.  Cal-Dive Int'l, Inc. v. Seabright Ins. Co., 627 F.3d 100, 113 (5th Cir.

4

2010).  Louisiana law mandates that "contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous, their terms are to be taken and understood in their plain, ordinary and popular sense."  Commercial Union Ins. Co. v. Advance Coating Co., 351 So. 2d 1183, 1185 (La. 1977).  The Louisiana Supreme Court has emphasized:

> The rule of strict construction does not authorize a
> perversion of language, or the exercise of inventive
> powers for the purpose of creating an ambiguity where
> none exists, nor does it authorize the court to make a
> new contract for the parties or disregard evidence as
> expressed, or to refine away terms of a contract
> expressed with sufficient clearness to convey the plain
> meaning of the parties . . . .

Elliot v. Cont'l Cas. Co., 2006-1505, p. 11 (La. 2/22/07); 949 So. 2d 1247, 1254 (quoting Commercial Union, 351 So. 2d at 1185).

*B.*

XL Speciality denied coverage of Mr. Scott's claim, asserting that notification was untimely pursuant to the policy's claims notification clause.  Located in the "Special Conditions" section of the policy, the claims notification clause states:

2.  CLAIMS NOTIFICATION CLAUSE

Notwithstanding anything else to the contrary contained in this Policy, it is hereby agreed that **the Underwriters hereunder are not liable for** any loss, damage, **injury,** expense, cost or claims whatsoever which otherwise would be recoverable under this Policy of insurance, **unless notice of such loss, damage, injury, expense, cost or**

> ***claim or circumstances which have not but may give rise
> of such a claim against the Assured is given to
> Underwriters in writing within 36 months from the expiry
> date of this Policy.***
>
> If the aforesaid 36 month period relating to written
> notification to Underwriters is invalidated by any law to
> which the Assured is subject, then such period shall be
> deemed amended to the minimum period permitted by such
> law.
>
> It is understood and agreed by the Assured, that, ***in the
> event of any occurrence which may result in loss, damage,
> injury, expense***, of claim for which Underwriters
> hereunder are or may become liable under this Policy,
> ***notice thereof shall be given to said Underwriters as
> soon as practicable*** and, further, that any and every
> notice of claim, pleading, and paper of any kind relating
> to such occurrence, shall be forwarded promptly on behalf
> of the Assured to these Underwriters.

Rec. Doc. 40-3 at 1 (emphasis added).  Therefore, based on the
plain language of the clause, XL Speciality submits that it is
not liable for Mr. Scott's claim because notice was received more
than thirty-six months after expiration of the policy:  XL
Speciality provided insurance coverage to Settoon Towing from
November 4, 2000 until November 4, 2004, and Settoon sent notice
of Mr. Scott's lawsuit on September 21, 2012—well outside the
thirty-six month time frame.[1]      Settoon contends that the
claims notification clause unambiguously establishes two
notification schemes.  First, if the insured has knowledge of
circumstances that may give rise to a claim, the insured must

---

[1] Notice was sent approximately ninety-six months after the
policy's expiration, which is sixty months too late.

provide notice within thirty-six months of the policy's
expiration date.  Second, if the insured does not have knowledge
of circumstances that may give rise to a claim, then the insured
must give notice as soon as practicable after learning of such
circumstances.  In other words, Settoon views the first and third
paragraphs of the claims notification clause as mutually
exclusive.  Because Settoon did not have knowledge that Mr. Scott
was being exposed to small amounts of benzene, the thirty-six
month time frame of the first paragraph does not apply.  Settoon
notified XL Speciality as soon as practicable after Mr. Scott
filed suit, therefore satisfying the third paragraph of the
claims notification clause.  In the alternative, if the Court
finds that the notification clause is ambiguous, Settoon contends
that this "two-scheme" notification interpretation is reasonable,
and, because it is the interpretation that affords coverage, it
should be adopted.  In response, XL Speciality asserts that
Settoon is incorrectly reading the paragraphs separately, whereas
the clause, as a whole, is consistent with a "claims-made"
policy.

     Insurance policies are often classified as "claims-made"
policies or "occurrence-based" policies.  See Matador Petroleum
Corp. v. St. Paul Surplus Lines Ins. Co., 174 F.3d 653, 658 (5th
Cir. 1999).  Under a claims-made policy, an actual claim must be
filed during the policy period in order to trigger insurance

coverage; the mere fact that the injury was sustained during the policy period is not enough.  See id. ("In the case of a 'claims-made' policy . . . notice itself constitutes the event that triggers coverage.").  Claims-made policies often provide a "discovery period" for the reporting of claims; such a provision specifies a period of time *after* the expiration of the policy during which a claim will be considered timely.  As a result, claims-made policies with a discovery period are more generous in coverage by extending the time in which notice can be given to the insurer.  On the other hand, an occurrence-based policy only requires that the injury have occurred during the policy period.  See id.  The injury itself triggers insurance coverage.  See id.; FDIC v. Booth, 82 F.3d 670, 678 (5th Cir. 1996) ("In occurrence based policies, the notice requirement is generally included to aid the insurer in administration of its coverage of claims.").

XL Speciality contends that the inclusion of the word "occurrence" in the third paragraph does not render the entire clause ambiguous or change the fact that the policy is a claims-made policy.  The Court agrees.  Louisiana law mandates:

> The insurance contract is to be construed as a whole. Labels and headings given to the respective sections of the contract and the placement of the sections of the contract are pertinent to the inquiry of coverage, but one section or its placement is not to be constructed separately and at the expense of disregarding other sections or placements.

Benton Casing Serv., Inc. v. Avemco Ins. Co., 379 So. 2d 225, 231

(La. 1979).  Turning to the contract in this case, the first
paragraph of the claims notification clause provides:

> [T]he Underwriters  . . . are not liable for any loss,
> damage, injury, expense, cost or claim . . . ***unless
> notice of such loss, damage, injury, expense, cost or
> claim or circumstances which have not but may give rise
> of a claim*** against the Assured ***is given*** to Underwriters
> ***in writing within 36 months from the expiry date of this
> Policy.***

The plain language of the first paragraph therefore establishes
that unless notice of circumstances "which have not but may give
rise of" a claim is given in writing within thirty-six months
from the policy's expiration date, the claim is not covered.
This language is consistent with a claims-made policy.  As the
Fifth Circuit has explained:

> The notice requirements in claims made policies allow the
> insurer to "close its books" on a policy at its
> expiration and therefore "attain a level of
> predictability unattainable under standard occurrence
> policies." . . . . The purpose of the reporting
> requirement is to define the scope of coverage by
> providing a certain date after which an insurer knows it
> is no longer liable under the policy, and for this reason
> such reporting requirements are strictly construed."

Resolution Trust Corp. v. Ayo, 31 F.3d 285, 289 (5th Cir. 1994)
(citations omitted).  Similarly, the second paragraph relates to
the notice requirement:  if the thirty-six month time period is
held to be invalid by any law, then the "period shall be amended
to the minimum period permitted by such law."  Again, the plain
language of the second paragraph indicates that the contract
intended a set and limited period in which the insured is able

9

provide notice.  The third paragraph, the source of the parties

dispute, states:

> It is understood and agreed by the Assured, that, in the
> event of any occurrence which may result in loss, damage,
> injury, expense of claim for which Underwriters are
> hereunder are or may become liable under this Policy,
> notice thereof shall be given to said Underwriters as
> soon as practicable . . . .

Settoon focuses on the inclusion of the word "occurrence" in the

third paragraph.  Specifically, Settoon points to the indemnity

portion of the policy,[2] which states:

> Subject to all exclusions and other terms of this Policy
> the Underwriters agree to indemnify the Assured for any
> sums which the Assured, as owner of the Vessel, shall
> have become liable to pay, and shall have paid, in
> respect of any casualty or *occurrence* during the currency
> of the Policy but only in consequence of any of the
> matters set forth hereunder . . . . [l]oss of life and
> bodily injury or *illness* . . . .

Rec. Doc. 1 at 26 (emphasis added).  Other than this reference to

the fact that the policy (in general) covers illness, Settoon

provides no other support for the assertion that illness is

somehow a "subset" of "occurrence."  Settoon argues that because

the third paragraph of the claims notification clause uses the

word "occurrence" (and the first paragraph does not), then an

illness like Mr. Scott's aplastic anemia is only governed by the

---

[2] The Court notes that counsel completely fails to provide
citations to the record.  Quoting paragraphs from a 317 page
insurance policy, without any sort of citation, is unhelpful to
the Court.  The Court is not required to sift through the record
in search of evidence to support a motion for summary judgment or
opposition thereto.  See Ragas v. Tenn. Gas Pipeline Co., 136
F.3d 455, 458 (5th Cir. 1998).

notification requirements of the third paragraph.

     The Court notes that the third paragraph cannot be construed
separately, as Settoon would suggest, but rather it must be
examined in light of the first two paragraphs.  <u>See</u> <u>Benton</u>, 379
So. 2d at 231 ("[O]ne section or its placement is not to be
construed separately and at the expense of disregarding other
sections or placements.").  Construing the policy as a whole, the
Court finds no ambiguity concerning the claims notification
clause.  As previously mentioned, the first two paragraphs of the
clause clearly require written notice within thirty-six months
(or other set time period identified by law) post-expiration of
any loss, damage, injury, or expense that may give rise to a
claim.  The third paragraph merely mandates that such notice is
to be given as soon as practicable upon an occurrence of the
event that may result in loss, damage, injury, or expense.  The
use of the word "notice" in the third paragraph refers to the
written notice addressed in the preceding paragraphs.  Thus, the
paragraphs can be read in harmony and there is no ambiguity.
Under Louisiana law, insurance companies have the same right as
individuals to limit their liability, and to impose conditions
upon their obligations, so long as the conditions do not conflict
with public policy.[3]  <u>See</u> <u>Commercial Union</u>, 351 So. 2d at 1185.

---

[3] This issue was not raised by Settoon Towing.  The Court notes,
however, that Louisiana case literature frequently concludes that
claims-made policies, in multiple contexts, do not contravene the

The claims notification clause in question is listed as "special condition" of the policy, and, it is not the province of the Court to change the terms of a contract when no ambiguity exists.

Accordingly, Settoon Towing's motion for summary judgment is DENIED.[4]

New Orleans, Louisiana, June 5, 2013

MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

public policy of this state.  See, e.g., Scarborough v. Travelers Ins. Co., 718 F.2d 702, 711 (5th Cir. 1983) (applying Louisiana law); Hood v. Cotter, 2008-0215, p. 19 (La. 12/02/08); 5 So. 2d 819, 830.

[4] As a result, it is unnecessary to address Settoon Towing's argument regarding statutory penalties under Louisiana Revised Statutes § 22:17987 and 22:1892.